UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of SOICHI TAGAMI, Applicant. | Case No. 21-mc-80153-JCS<br><br>**ORDER REGARDING APPLICATION UNDER 28 U.S.C. § 1782**<br><br>Re: Dkt. No. 1 |

## I. INTRODUCTION

Soichi Tagami filed an *ex parte* application under 28 U.S.C. § 1782 for an order authorizing limited discovery from Google, LLC regarding three allegedly defamatory reviews posted on his medical clinic's Google Maps business profile. For the reasons discussed below, the application under § 1782 is GRANTED IN PART, without prejudice to any recipient of a subpoena or other interested party moving to quash.

## II. BACKGROUND

Tagami is the sole proprietor of the Yokohama Aoba Inguinal Hernia Surgery Clinic (the "Clinic") in Yokohama, Japan, operating since 2017. App. (dkt. 1) at 1. The Clinic specializes in inguinal hernia surgeries. *Id.* at 2.

The Clinic has a "business profile and appears on Google Maps." *Id.* Prospective patients often search for the Clinic using Google, which displays a Google Maps business profile for the Clinic. *Id.* Aside from location and contact information, Google Maps business profiles contain public ratings and reviews written by users with Google accounts that are visible to users searching for the business. *Id.* While the reviewer must have a Google account to post a review, they may post under a pseudonym. *Id.* Reviewer accounts are operated by Google, LLC, a Delaware company headquartered in Mountain View, California.

1   On July 18, 2018, at or around 10:49 PM Japan Standard Time (JST), a Google account posting under the pseudonym "U timmy" posted a one-star rating and a negative review on the Clinic's Google Maps business profile. *Id.* at 2–3. At or around 10:54 PM JST, another user under the pseudonym "Ykg Eric" posted a second one-star rating and negative review. *Id.* at 3. On January 3, 2019, at or around 6:03 PM JST, a third account posted a one-star rating and a negative review on the Clinic's profile under the pseudonym "Jdjbo Jcb's I." *Id.*

Tagami alleges that these reviews are "false, misleading, and damaging to the Clinic, and continue to injure the Clinic by damaging the reputation of the Clinic, and by causing significant loss of business and financial damage to the Clinic." *Id.* Tagami alleges that "[b]ecause most of the Clinic's patients contact the Clinic through the internet, the Subject Reviews have had a significant negative effect on the Clinic's business operations, whereby [Tagami] experienced a significant decrease in the number of new patients contacting the Clinic after the Subject Reviews were posted." Decl. of Soichi Tagami (dkt. 2) ¶ 21. Tagami attempted to identify the individuals behind the accounts by conducting an internal investigation, including reviewing the Clinic's patient medical records and speaking with the employees at the Clinic. *Id.* ¶ 13. However, neither Tagami nor other employees at the Clinic were able to identify the reviewers. *Id.* Based on this investigation, Tagami believes that the reviewers are not current or former patients of the Clinic. *Id.*

Tagami "has a strong suspicion" that is "supported by circumstantial evidence" that a former disgruntled employee is behind these reviews. App. at 3. This suspicion is based on the fact that, on July 18, 2018, around 5:00 PM JST and a few hours before the first two negative reviews were posted, Tagami had disciplined the employee, leading to their resignation from the Clinic. Tagami Decl. ¶¶ 17–18. Tagami also believes that it is implausible that real patients would have described his medical practice in the manner of these reviews. *Id.* ¶¶ 14–16.

On June 29, 2021, Tagami applied *ex parte* for an order pursuant to 28 U.S.C. § 1782 for authorization to conduct limited discovery by serving a subpoena on Google, LLC for "personally identifying information that can be used to identify the true identities of the Anonymous Individuals." App. at 4. Tagami intends to bring civil lawsuits for reputational torts under

2

Articles 709 and 710 of the Japanese Civil Code against the individual(s) behind these reviews. *Id.*

### III. DISCUSSION

#### A. Legal Standard

Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782(a). Section 1782 permits district courts to authorize discovery where the following requirements are met: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted).

A litigant in a foreign action qualifies as an "interested person" under § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Further, § 1782 does not require that a formal proceeding in the foreign jurisdiction is currently pending, or even imminent; rather, a court may permit discovery under Section 1782 so long as a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *In re Hoteles City Express,* No. 18-mc-80112-JSC, 2018 WL 3417551, at *2 (N.D. Cal. July 13, 2018) (quoting *Intel*, 542 U.S. at 256).

Even if the basic requirements of § 1782 are satisfied, however, a district court has wide discretion in deciding whether to permit discovery under § 1782. *Intel*, 542 U.S. at 260–61. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or

other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65.

"A district court's discretion is to be exercised in view of the twin aims of § 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *In re Nat'l Ct. Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) (citing *Schmitz v. Bernstein Libehard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)). The party seeking discovery need not establish that the information sought would be discoverable under the foreign court's law or that the U.S. would permit the discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261–63.

### B. The Statutory Requirements Are Met

Tagami's application meets the minimum statutory requirements under § 1782. Tagami has established that he is an "interested person" seeking "documents or things" for use in a foreign proceeding. *See* Soichi Decl. ¶ 24 ("I intend to and will file civil lawsuits against all of the Anonymous Individuals for damaging the reputation of the Clinic."). Google is headquartered in Mountain View, California, in this district. The Court therefore has authority to issue this subpoena.

### C. The First Discretionary Factor

Courts next consider the four discretionary *Intel* factors in deciding whether to grant the application. The first discretionary factor considers whether applications for discovery are seek discovery from participants in the foreign proceeding. *Intel*, 542 U.S. at 247. "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264; *see also In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) ("[T]he key issue is whether the material is obtainable through the foreign proceeding." (citation omitted)). As such, the first discretionary factor favors discovery against nonparticipants in foreign proceedings. *Cf. In re Varian Med. Sys.*, 2016 WL 1161568, at *4 (finding that the First *Intel* factor weighs heavily against seeking discovery from participants in

foreign tribunals). Tagami has asserted that "Google is not, and will not be, a party or participant to the anticipated Japanese civil lawsuits," and that the documents are held in the United States and are outside of the reach of Japanese courts' jurisdiction. Decl. of Tomohiro Kanda (dkt. 3) ¶ 17. Therefore, this factor weighs in favor of the application.

### D. The Second Discretionary Factor

The second discretionary factor "focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian Med. Sys.*, 2016 WL 1161568, at *4. Where there is no evidence suggesting that foreign courts would be unreceptive to the requested discovery, the second discretionary factor weighs in favor of the application. *See In re Med. Corp. H&S*, No. 19-mc-80107-SVK, 2019 WL 2299953, at *3 (N.D. Cal. May 30, 2019) (holding that the second factor weighs in favor of an application when there is an absence of evidence that a foreign tribunal is unreceptive to this type of discovery, or the information sought). Tagami has represented that there is no reason or evidence that Japanese courts would object to this type of discovery. *See* App. at 8. There is no evidence in the record to the contrary. The second factor therefore weighs in favor of the application.

### E. The Third Discretionary Factor

The third factor considers whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Where there is a "perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782" this factor may weigh against the application. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013). But absence of evidence of attempted circumvention weighs in favor of an application. *See, e.g., In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *2 (N.D. Cal. Dec. 15, 2014); *In re Eurasian Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018); *In re Honda*, No. 21-mc-80167-VKD, 2021 WL 3173210, at *4 (N.D. Cal. July 27, 2021). Here, Tagami has asserted that the purpose of this application is to identify account holders behind the Google Maps reviews because Japanese courts do not allow civil lawsuits against unknown defendants. App. at 4. As the requested

discovery is limited to records for identification purposes, and there is no evidence that Tagami is attempting to circumvent Japanese discovery rules or any policy of the United States,[1] the Court finds that the third factor weighs in favor of granting the application.

### F. The Fourth Discretionary Factor

The fourth factor considers whether the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.[2] Requests are unduly burdensome when they are "not narrowly tailored, request confidential information and appear to be a "broad fishing expedition for irrelevant information." *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). The "proper scope" of requests under section 1782 is "generally determined by the Federal Rules of Civil Procedure." *In re Varian Med. Sys.*, 2016 WL 1161568, at *5. Parties "may obtain discovery that is relevant to any parties claim or defense," Fed. R. Civ. P. 26(b)(1), but "unduly

---

[1] Although this Court is not aware of case law addressing this issue in the context of the third discretionary factor, it is possible that applications seeking to unmask anonymous speakers and subject them to legal action for their speech might implicate "policies . . . of the United States," *Intel*, 542 U.S. at 265, related to the First Amendment. Even where the speakers appear to be "foreign citizens outside U. S. territory" who "do not possess rights under the U. S. Constitution," *see Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020), the principles underlying the First Amendment may counsel against a court of the United States exercising its discretion to aid in punishing speech that would be protected in this country. Here, however, Tagami asserts intentionally false and injurious statements that likely would not be protected by the First Amendment even in the United States. *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) (discussing the balance between the First Amendment and "the important social values which underlie the law of defamation" (cleaned up)). Accordingly, without prejudice to any argument that might be raised on a motion to quash, the Court does not find that policies related to the First Amendment warrant denying this application *sua sponte*.

[2] In requests for the identity of anonymous speakers, the fourth discretionary factor also considers the First Amendment and the potential chilling effect that granting the request would have on anonymous speech. *See Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102-DMR, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021). As a substantial number of applications have been filed within the last year seeking personally identifiable information from Google for the purpose of identifying of negative reviewers, the Court is concerned that the influx of these requests will create a chilling effect on the speech of anonymous reviewers or embolden entities which seek only to harass or intimidate the speakers. *See In re Komanokai*, No. 4:20-mc-80149-KAW, 2020 WL 6684565, at *3 (N.D. Cal. Nov. 12, 2020) (denying application for discovery seeking the identities of negative reviewers on the basis that it was likely a "fishing expedition" and that the applicant was "far more likely to use the subscriber information to intimidate and harass the user into taking down the one-star review, rather than filing a lawsuit"). However, as Google and the individual users at issue are best placed to assess the burden and chilling effect that this request may have on their and other Google users' speech, and Tagami has asserted that the statements are false and defamatory such that they would not be protected by the First Amendment even if made in the United States, the Court declines to resolve this issue *sua sponte*, without prejudice to addressing it on a motion to quash.

intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 246.

Tagami's proposed subpoena requests all documents showing names, addresses, "recovery, authentication, or ALL other" telephone numbers and email addresses, names and addresses for all payment methods registered to the accounts, as well as access logs and login history "for the three-month period immediately preceding June 29, 2021 and until the date that you respond to this request." App. Ex. B at 2–4. Tagami requests this same information for any other accounts affiliated with the reviewers' Google accounts, such as Google Ads accounts. *Id.* The proposed subpoena appropriately does not seek the content of any communications associated with the accounts at issue, nor does it request the users' credit card numbers, expiration dates, or validation codes. *Id.*

As this subpoena requests personally identifying information from anonymous speakers, it intrudes upon the privacy interests of the Google account holders. Tagami's request for all potentially identifying information is overly broad; it is appropriate to authorize Tagami to seek information *sufficient* to identify the reviewers, but not to provide an all-encompassing trove of the account-holders' private information. In particular, the six requests for access logs and login history from the accounts, spanning three months before the application to the date of Google's response to the subpoena, is not adequately justified. *See In re Hayashi Surgical Clinic*, No. 19-MC-80071-VKD, 2019 WL 1560461, at *4 (N.D. Cal. Apr. 10, 2019) (finding that without justification, access logs were unnecessary to identify the users behind Google reviews). Tagami makes a sufficient case for the utility of acquiring IP addresses associated with the Google accounts, especially if the personally identifiable information entered into the Google Account is falsified. *See* Kanda Decl. ¶ 23. However, the requested access logs encompass more than IP addresses, including information such as method and time of login. *Id.* Although Tagami supports his need for IP addresses, he provides no justification for the other information in the access logs. *See id.*

Tagami may serve the subpoena on Google, subject to the following modifications: (1) Tagami may request only documents *sufficient to identify* all names and contact information for the Google users at issue, rather than *all* documents containing duplicative instances of that

7

information; (2) the removal of the six requests for access log and login history for the three Google accounts and any associated accounts, which may be replaced with a request for documents sufficient to identify all IP addresses used to access the accounts at issue.

**IV.     CONCLUSION**

As this application meets the statutory criteria for an order authorizing service of the proposed subpoena and the discretionary factors favor authorization of service, the Court authorizes service of the proposed subpoena on Google, subject to the above modifications.

This order is without prejudice to any argument that might be raised in a motion to quash or modify the subpoena by Google following service or by the Google account user(s) whose identifying information is sought, and the Court orders Tagami to comply with the following requirements to ensure all interested persons have an opportunity to contest the subpoena if they wish:

1. At the time of service of the subpoena, Tagami must also serve a copy of this order on Google.

2. No later than 10 days after service of the subpoena and this order, Google shall notify each of the account users that their identifying information is sought by Tagami and shall serve a copy of this order on each such account user.

3. Google and/or each account user whose identifying information is sought may, no later than 21 days after Google provides notice to its users, file a motion in this Court contesting the subpoena (including a motion to quash or modify the subpoena).

4. If any party contests the subpoena, Google shall preserve, but not disclose, the information sought by the subpoena pending resolution of that contest.

5. Any information Tagami obtains pursuant to the subpoena may be used only for purposes of the anticipated action in Japan, and Tagami may not release such information or use it for any other purpose, absent a Court order authorizing such release or use.

**IT IS SO ORDERED.**

Dated: November 16, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge